Roepke v. Nutzmann.

---

EMMA ROEPKE ET AL., APPELLANTS, V. JAMES NUTZMANN ET AL., APPELLEES.

FILED APRIL 3, 1914. No. 17,496.

1. **Deeds:** NECESSITY FOR DELIVERY. "The delivery of a deed is essential to render the conveyance operative." *Brown v. Westerfield,* 47 Neb. 399.

2. ———: DELIVERY. "Delivery is purely a question of intent to be determined by the facts and circumstances of each particular case." *Brown v. Westerfield,* 47 Neb. 399.

3. ———: ———. "It is not essential to the validity of a deed that it should be delivered to the grantee personally. It is sufficient if the grantor delivers it to a third person unconditionally for the use of the grantee, the grantor reserving no control over the instrument." *Brown v. Westerfield,* 47 Neb. 399.

4. ———: DELIVERY ON DEATH OF GRANTOR. A father signed and acknowledged two deeds, before a notary public, conveying a portion of his real estate to two of his children, and delivered the deeds to the notary, before. whom they were acknowledged, for the use and benefit of the grantees, without any reservation or control, with the intention and understanding that the notary should retain the custody of the instruments until the grantor's death, when he was to record them. No information of the making of the deeds was given to the grantees until after the death of the grantor, but the grantor, during his lifetime, expressed to a disinterested person his satisfaction of what he had done, and never modified nor countermanded his instructions to the notary. *Held,* That the delivery to the notary was sufficient to pass the title to the property to the grantees at the date of such delivery, subject to their acceptance of the same when informed of the conveyance. Following *Brown v. Westerfield,* 47 Neb. 399.

APPEAL from the district court for Gosper county: ROBERT C. ORR. JUDGE. *Affirmed.*

*Lambe & Butler* and *O. E. Bozarth,* for appellants.

*W. S. Morlan* and *E. T. Grunden, contra.*

REESE, C. J.

This is an action to cancel the records of the two certain deeds made by Christian Nutzmann on the 6th day of January, 1909, one to the defendant James Nutzmann for the northwest quarter and the west half of the southwest quarter, and the other to Elbert Nutzmann for the southeast quarter and the east half of the southwest quarter, all in section 23, township 7 north, of range 21 west, in Gosper county. The facts as disclosed by the pleadings and evidence may be said to be that Christian Nutzmann was the father of the two defendants above named, as well as of some of the plaintiffs, and was possessed of quite a large quantity of land; that having previously lost his wife, the mother of parties to this suit, he on or about the 7th day of January, 1909, entered into the marriage relation with defendant Anna Nutzmann, and on the day preceding such marriage, to wit, on the 6th day of January, 1909, procured the deeds to be written, signed, witnessed, and acknowledged by him, and left them in the possession of the notary,

who had prepared the deeds and taken the acknowledgments, with instructions to cause them to be recorded in case of his decease. So far as is disclosed by the record, neither of the grantees knew anything of the making of the deeds, either at the time they were made or at any time thereafter, until after the death of their father, when the deeds appeared of record. The deeds were therefore never delivered to them, personally, during the lifetime of the grantor, but were kept in possession of the notary, as custodian, until after the death of the grantor, which occurred about the 13th or 14th of January, 1911. This was in accordance with the instructions of the grantor, which appears to have been definitely given, viz., that the deeds were to be held by the notary until the death of the grantor and then placed upon record. Nothing appears to have been said about deliveries to the grantees. When the notary had caused them to be placed upon the county records, he appears to have discharged his whole duty with reference to them. While the consideration of $10,000 mentioned in the deeds was suggested by the grantor at the time they were made, it sufficiently appears that no money consideration was ever paid. The testimony of the notary is: "When I was drawing up the deeds, when he came to the point of the consideration, I asked him what consideration he wanted to put in the deeds. Well, he said he didn't know. He hesitated a moment, then he said he wanted to make these deeds because the boys had helped him work at home and helped earn the property. Then I spoke up, and I says, 'You can make the deeds one dollar or most any other consideration you want to.' He stood there a moment thinking, then he says, 'Well, make it $10,000.' That is my recollection of it, and I think that was the amount put in the deeds." It was shown that the grantor leased the land described in the deeds to defendants and others after the deeds were made and up to the time of his death. The notary was the local banker at Bertrand, and he placed the deeds in the bank safe, where they remained until taken out and filed for record. The trial of the cause resulted in

a finding and decree in favor of defendants and a dismissal of the suit. Plaintiffs appeal.

While a number of questions involved in the rulings of the court upon the admission and rejection of evidence are presented, it is quite clear that the controlling and ruling question in the case is as to the delivery of the deeds. Upon that question there is no conflict. There is no showing or intimation that at the time the deeds were written, nor at any other time during the lifetime of the grantor, there was any impairment of his mental faculties, nor did he ever change his instructions to the notary. Was the delivery of the deeds to the notary, in the absence of defendants, and without any knowledge on their part of their execution prior to the death of the grantor, with the instructions given, a sufficient delivery to render the conveyances valid? As said in *Brown v. Westerfield,* 47 Neb. 399, "the delivery of a deed is indispensable to its validity," which is a well-recognized and established rule of law. The question in this case is: Did the delivery of the deeds to the notary, with positive instructions to place them upon record upon the happening of the grantor's death, and which instructions were never modified nor countermanded, amount in law to a delivery of the deeds to or for the benefit of the grantees? It is not for the court to say that the conveyances were inequitable as a division of the grantor's land among his children, for he had the right, had he so desired, to convey his whole property to any one or more of his children, and the court could not for that reason alone interfere. It is quite apparent that at the time of making the deeds it was the grantor's purpose to make a present transfer of the title for the benefit of the defendants upon the occasion of his decease. It seems to us that, whatever might be our views upon the question involved, *Brown v. Westerfield, supra,* is so nearly like the case at bar as to settle the question in favor of the grantees. It is not the province of the court to inquire as to the justice of the reasons assigned by which he justified his act. It is true that the grantees knew nothing of the conveyances until after the death of their father and the deeds were on record; but,

for the reasons assigned by him, it was his desire that the transfers should be kept secret and thus avoid the expression of dissatisfaction of his other children during his life. It is therefore not unreasonable that he should retain possession of the land, receiving the rent from defendants and others, or that one of the defendants, as administrator, with another, of the father's estate, should account for rent to the estate. Following the holding in *Brown v. Westerfield, supra,* we feel bound to hold that the delivery was sufficient. See, also, *Dickson v. Miller,* 145 N. W. (Minn.) 112; *Loomis v. Loomis,* 144 N. W. (Mich.) 552.

Upon reading the briefs and record, we have been impressed with the belief that the trial court held too strictly against plaintiffs in the exclusion of evidence, and, had anything been offered which could throw light upon the question of delivery, it should have been received. But, upon a close inspection of the record, we are persuaded that, under the law as applied to the facts, a new trial could not avail the plaintiffs, and that the judgment should be affirmed, which is done.

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.